**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DONGGUAN HONGYU PLASTIC CO., LTD., | ) ) | |
| | ) | Civil Action No. 1:25-cv-00827 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | **JURY TRIAL DEMAND** |
| IDEAL TIME CONSULTANTS LTD., | ) ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY RELIEF, UNFAIR COMPETITION, BUSINESS DISPARAGEMENT, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

Plaintiff Dongguan Hongyu Plastic Co., Ltd. ("Hongyu" or "Plaintiff") brings this Complaint for Declaratory Relief, Unfair Competition, Business Disparagement, and Tortious Interference with Prospective Business Relations and Demand for Jury Trial against Ideal Time Consultants Ltd. ("ITC" or "Defendant").

## I.    NATURE OF THE ACTION

1.    This is an action for declaratory judgment under the Federal Declaratory Judgment Act, Title 28, United States Code, Sections 2201 and 2202, seeking a judicial determination that Plaintiff does not infringe any valid and enforceable claims of U.S. Patent No. 7,353,555 (the "'555 Patent" or "Asserted Patent"), and that the Asserted Patent is invalid under the Patent Laws of the United States, Title 35, United States Code, Section 1 *et seq.*

2.    Plaintiff brings this action to prevent and redress ITC's unlawful efforts to disrupt Plaintiff's business and unfairly compete in the highly competitive air mattress market. Plaintiff is a manufacturer and brand owner of a leading air mattress product line, and ITC is a direct competitor.

3.      In an effort to interfere with lawful competition, ITC obtained a patent that purports to cover features long known in the art—features that have been widely used in air mattresses for years. The Asserted Patent is invalid because, among other reasons, each element claimed therein is disclosed in the prior art.

4.      Despite the lack of any legitimate infringement claim, and despite the material differences between Plaintiff's products and the Asserted Patent, ITC submitted takedown notices to Amazon.com targeting Plaintiff's product listings. These wrongful notices falsely accused Plaintiff of patent infringement and resulted in the delisting of Plaintiff's air mattresses from the Amazon platform.

5.      As a result of ITC's baseless enforcement tactics, Plaintiff has suffered immediate and irreparable harm, including lost sales, lost market share, and damage to their reputation and goodwill. ITC's conduct is not only unjustified under patent law, but also constitutes business disparagement, unfair competition under Texas law, and tortious interference with Plaintiff's prospective business relationships.

## II.      **THE PARTIES**

6.      Plaintiff Hongyu is a limited liability company organized under the laws of People's Republic of China, with its principal place of business at Huijing Industrial Park, Yanhe Industrial Zone, Liwu, Qiaotou Town, Dongguan, Guanddong, China, 523535.

7.      On information and belief, Defendant ITC is a corporation organized under the laws of the British Virgin Islands with its principal place of business in Tortola, British Virgin Islands.

## III.      **JURISDICTION AND VENUE**

8.      This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202; and Texas common law.

9.      This Court has jurisdiction over the parties and the subject matter of the action pursuant 28 U.S.C. §§ 1331, 1332, and 1338. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims not brought under a federal statute because those claims are related to, and form part of the same case or controversy as the federal question claims.

10.      Complete diversity exists between the parties. Plaintiff Hongyu is a Taiwanese limited liability company with a principal place of business in Taiwan. Defendant ITC is a British Virgin Islands corporation with a principal place of business in the British Virgin Islands. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11.      This Court has personal jurisdiction over Defendant ITC because ITC has purposefully directed its conduct toward Texas and this District by, among other things, sending takedown notices to Amazon.com targeting Plaintiff's product listings accessible and marketed to consumers in this District, and causing foreseeable harm to Plaintiff's business relationships and sales in this forum.

12.       ITC's wrongful conduct, including the assertion of baseless patent infringement claims and dissemination of false and misleading statements to a major online marketplace, was expressly aimed at the Western District of Texas, where a substantial portion of the harm occurred, including lost sales to customers in this District.

13.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is subject to personal jurisdiction in this District. Venue is also proper under 28 U.S.C. § 1400(b) to the extent this action involves declaratory relief related to patents.

## IV.     FACTUAL ALLEGATIONS

### A.     THE CROWDED MARKET FOR AIR MATTRESSES

14.     The air mattress market is longstanding, crowded, and intensely competitive. Air mattresses have existed in commercial and consumer markets for well over a century, with companies continually releasing variations that incorporate long-established design and structural features.

15.     As early as the late 1800s, publications and product advertisements featured inflatable bedding systems with the same fundamental characteristics seen in modern air mattresses: upper and lower panels, sidewalls or tubular peripheries to maintain shape, and internal support structures—such as air columns or chambers—to improve comfort and weight distribution, as shown in the image below.





Mechanical Mfg. Co., Boston, MA. 10,000 Nights of Luxury Being a Description of the "Perfection" Air Mattresses with a Few Words about "Perfection" Pillows and Cushions, 1896, 11, "Perfection" Air Mattress.

16.    Today, dozens of brands and sellers compete in the air mattress space, both online and in physical retail, offering products with overlapping characteristics that have become industry standard. These include a top panel configured for sleeping, a bottom panel for floor contact, side or tubular perimeter walls to enclose the volume, internal chambers or baffles to resist sagging and improve load distribution, built-in or external air pumps, and valve systems for inflation and deflation.

17.    These common elements are well known in the field. Numerous expired and active utility and design patents illustrate the ubiquity of these features, as do decades of publicly available marketing materials, product manuals, and third-party reviews.

18.    A simple search of online marketplaces such as Amazon.com, Walmart.com, and Alibaba reveals hundreds of air mattresses available for purchase—many of which share indistinguishable combinations of the above-described elements, as shown in the images below. In short, the consumer market has been saturated with substantially similar designs for years, and consumers expect a baseline level of form and function that is not protectable by patent law.



https://www.amazon.com/air-mattress/s?k=air+mattress.

19.     Plaintiff's air mattresses fall squarely within this well-established commercial landscape. Their products use functional features that are ubiquitous in the market and do not infringe on any legitimate, protectable intellectual property rights held by Defendant. Where Plaintiff has introduced novel functionality beyond the conventional design elements described above, they have independently sought and obtained their own patent protection—protection that is valid, enforceable, and unrelated to the rights ITC now asserts.

20.     The market for air mattresses is crowded and competitive. Air mattresses have been on the market for decades, with numerous sellers on the market. Many air mattress designs share similar features, including a top panel, a bottom panel, a side panel, a tubular periphery, and an internal support structure.

21.     Against this historical and market backdrop, Defendant's attempt to assert exclusive rights over these long-known configurations is not only improper—it is misleading and disruptive. It is precisely the type of baseless patent enforcement that the declaratory judgment and unfair competition laws are intended to prevent.

B.     **PLAINTIFF'S INNOVATION IN AIR MATTRESS PRODUCTS**

22.     Plaintiff Hongyu is a professional manufacturer specializing in PVC inflatable products, including air mattresses, inflatable toys, and related consumer goods.

23.     Hongyu operates extensive production facilities and serves as a key manufacturing partner for leading international brands.

24.     Hongyu invests heavily in product research, development, and intellectual property. Hongyu's technological contributions to inflatable product design and functionality have positioned it as a trusted source for high-quality, innovative air mattresses.

25.    Among the innovations developed and protected by Hongyu is U.S. Patent No. 12,108,880 (the "'880 Patent"), which issued following a full and fair examination by the United States Patent and Trademark Office from an application filed on June 13, 2023. The '880 Patent covers novel structural features and utility enhancements in inflatable mattresses that are not found in prior art and are materially distinct from the subject matter claimed in Defendant's asserted patent.

26.    Since at least 2023, Plaintiff has sold a line of air mattresses covered by the '880 Patent through Amazon.com and other retail platforms. These products are identified under the following Amazon Standard Identification Numbers (ASINs): B0D7LH4PBS, B0C555TGHR, B0D2MP66Y1, B0D2HM62SM, B09NBTJZZ7, B0CXDDW6CJ, B0C6T55KVH, B0C4P9DJTM, B0D95S2HGZ, B0D8VM9236, B09NBTKRKB, B0D5GZT79C, B0CCV3CCY1, B0D7J38W9K, B0B4G7WPPV, B0D4Z6WLX7, B0C557NZGL, B0C73GPM35, B0D53QF3VC, B0D7L993KZ, B0D8L6LVTM, B0D1KB71SV, B0D95TSRTP, B0CZDV6TWX, B0D7L97HG5, B0CR1BKGQ4, B0CP23FCVY, B0D2QX7WRZ, B0D2MM4L15, B0D53ZYYC9, B0D7LGY594, B0D53RCYFZ, B0CHFY411R, B0CZDYJSGT, B0CZF14LTP, B0C6T6DBX4, B0C73JZG5R, B0CXDNFWZ9, B0CXDNP7CS, B0D8V6B655, B0D2QZQY4H, B0C24G68XP, B0D7L72H8S, B0D3WDMHQL, B0CX134B4S, B0D1KCN5XW, B0CX1LM6JL, B0CZDS23JN, B0D7L2CNY2, B0CXDJF42F.

27.    Each of these ASINs corresponds to a product that embodies the inventions claimed in the '880 Patent. Plaintiff's product offerings are thus not only lawful and longstanding but also independently protected by a valid and enforceable patent—contrary to Defendant's assertion that such products infringe its own questionable patent claims.

## ITC'S ANTICOMPETITIVE USE OF THE '555 PATENT

28.     On December 7, 2005, Vincent W.S. Lau, the principal of ITC, filed U.S. Patent Application No. 11/295,923, entitled "Inflatable Mattress Assembly" ("the '923 Application")

29.     The '923 Application issued on April 8, 2008, as U.S. Patent No. 7,353,555. A true and correct copy of the '555 Patent is attached as **Exhibit 1**.

30.     The '555 Patent includes a first independent claim representative of the limitations of all 13 claims.

31.     Claim 1 of the '555 Patent reads:

1. An inflatable mattress comprising:

top and bottom panels and a peripheral side panel with a bottom edge connected to said bottom panel;

a peripheral frame forming an upper tubular periphery of said inflatable mattress, said peripheral frame having an internal wall interconnecting said top panel to said side panel, said internal wall being within an interior volume of said inflatable mattress;

said internal wall being connected to said side panel along a first peripheral seam located substantially below a level of said top panel and being connected to said top panel along a second peripheral seam located substantially inwardly from said first peripheral seam;

said peripheral frame having an external wall interconnecting said first seam to said second seam, said external wall forming a boundary of said inflatable mattress and having a top portion disposed above a level of said second peripheral seam; and

said internal wall of said peripheral frame includes a fluid passage therethrough, said internal wall is in substantial pressure equilibrium within said interior volume, and said internal wall has a substantially linear cross-section between said first and second seams.

Ex. 1, '555 Patent at 4:30-52.

8

32.    As shown above, Claim 1 recites, among other features, an "internal wall" of the mattress that has a "substantially linear cross-section" and connects peripheral seams in a specific structural arrangement.

33.    The '555 Patent drawings further illustrate this structure. As shown in Figure 3, the top panel is labeled as 8; the bottom panel as 22; the peripheral side panel as 16; and the internal wall as 30.

34.    Patent protection is granted only to inventions that are both novel and non-obvious. *See* 35 U.S.C. §§ 101, 102, 103. The '555 Patent, however, claims features—such as a top panel, bottom panel, peripheral sidewall, and internal support wall—that were widely known and disclosed in the prior art decades before the application was filed.

35.    On information and belief, ITC and Mr. Lau were well aware of the crowded nature of the air mattress field at the time of filing. Yet they proceeded to seek patent protection for a configuration composed of conventional, preexisting elements—not to advance genuine innovation, but to assert exclusionary rights against competitors under the guise of patent enforcement.

36.    On or about November 12, 2024, Plaintiff received a notification from Amazon.com that multiple product listings for their air mattresses had been removed following a patent infringement complaint submitted by ITC. The complaint alleged infringement of the '555 Patent and caused delisting of dozens of Plaintiff's ASINs, including but not limited to:

B0D7LH4PBS,    B0C555TGHR,    B0D2MP66Y1,    B0D2HM62SM,    B09NBTJZZ7,
B0CXDDW6CJ,    B0C6T55KVH,    B0C4P9DJTM,    B0D95S2HGZ,    B0D8VM9236,
B09NBTKRKB,    B0D5GZT79C,    B0CCV3CCY1,    B0D7J38W9K,    B0B4G7WPPV,
B0D4Z6WLX7,    B0C557NZGL,    B0C73GPM35,    B0D53QF3VC,    B0D7L993KZ,

B0D8L6LVTM,     B0D1KB71SV,     B0D95TSRTP,     B0CZDV6TWX,     B0D7L97HG5,

B0CR1BKGQ4,     B0CP23FCVY,     B0D2QX7WRZ,     B0D2MM4L15,     B0D53ZYYC9,

B0D7LGY594,     B0D53RCYFZ,     B0CHFY411R,     B0CZDYJSGT,     B0CZF14LTP,

B0C6T6DBX4,     B0C73JZG5R,     B0CXDNFWZ9,     B0CXDNP7CS,     B0D8V6B655,

B0D2QZQY4H,     B0C24G68XP,     B0D7L72H8S,     B0D3WDMHQL,     B0CX134B4S,

B0D1KCN5XW, B0CX1LM6JL, B0CZDS23JN, B0D7L2CNY2, B0CXDJF42F. A true and

correct copy of the takedown notice from Amazon is attached as **Exhibit 2**.

37.    On or about November 25, 2024, Plaintiff submitted a detailed response to Amazon

explaining why their air mattresses do not infringe any claim of the '555 Patent. In particular,

Plaintiff demonstrated that their products do not include a "substantially linear" internal wall,

nor a "fluid passage therethrough" the internal wall as required by the '555 Patent. Instead, the

internal wall in Plaintiff's products is formed using multi-segmented hot-press welding, which

intentionally introduces breaks between each weld segments. A true and correct copy of this

submission is attached as **Exhibit 3**.

38.    Upon inflation, these breaks expand to form external channels that allow for airflow

between the main chamber and the peripheral frame—not through the wall itself. This structure

preserves the wall's mechanical integrity and does not meet the claim limitation requiring a fluid

passage "therethrough." Moreover, the segmented welds produce non-linear features in the

wall's cross-section, and the localized expansion causes uneven internal pressures, in direct

contradiction to the claim's requirement of "substantial pressure equilibrium." *See* Ex. 3 at 9-13.

39.    As Plaintiff explained in its letter, Plaintiff's air mattresses employ a configuration

where the internal wall's connections are achieved through multi-segmented hot-pressing. *See*

Ex. 3 at 9-13. The expandable breaks form channels during inflation without requiring a fluid

passage through the wall. *Id.* This design introduces non-linear features and pressure variations inconsistent with the '555 Patent's claimed structure. *Id.*

40.    Plaintiff's submission included side-by-side structural comparisons, internal images, and detailed technical explanations. Amazon acknowledged receipt of the explanation, which would have been shared with the reporting party, ITC.

41.    Moreover, ITC was or should have been fully aware that it could not lawfully assert the '555 Patent against products like Plaintiff's, which employ structurally distinct internal configurations. During prosecution of the '555 Patent, Mr. Lau overcame a prior art rejection based on U.S. Patent No. 4,745,694 to Wang by expressly amending the claims to require a "substantially linear" internal wall. This amendment was necessary to distinguish the claimed invention from the prior art and gave rise to prosecution history estoppel. As a result, ITC is estopped from asserting that products with non-linear internal walls—such as Plaintiff's curved and segmented-weld design—fall within the scope of the '555 Patent.

42.    On or around November 29, 2024, Amazon responded with a request, due to ITC's lack of withdrawal and the technical nature of the dispute, for Plaintiff to provide an official legal opinion letter from counsel. A true and correct copy of Amazon's request is attached as **Exhibit 4**.

43.    On or around December 2, 2024, Plaintiff responded with a formal opinion letter from counsel reaffirming the non-infringement position, supported by the extensive visual evidence and analysis. Plaintiff reiterated its demand that Amazon remove the violation and ITC retract its baseless claim. A true and correct copy of the formal letter and legal opinion of non-infringement from Plaintiff's counsel is attached as **Exhibit 5**.

44.    On or around December 15, 2024, Amazon reinstated all of Plaintiff's air mattress listings and removed the infringement violation from its account.

45.    Nevertheless, on May 6, 2025, ITC again submitted a takedown notice to Amazon targeting the same ASINs and again alleging the same infringement position of the claims of the '555 Patent—despite having full knowledge of Plaintiff's non-infringing product structure and the prior resolution.

46.    On or around May 9, 2025, rather than engage in another lengthy takedown dispute with Amazon, Plaintiff wrote directly to ITC. Plaintiff restated the clear design differences— particularly the curved internal wall—and emphasized that the '555 Patent cannot be infringed. Plaintiff further advised that ITC's conduct was predatory, timed to interfere with peak sales seasons, and constituted unfair competition under federal and state common law. A true and correct copy of the May 9, 2025 Letter from Plaintiff to ITC is attached as **Exhibit 6**.

47.    ITC has not substantively responded to Plaintiff's May 9, 2025 Letter.

48.    Despite full notice of these issues, ITC has continued its campaign to suppress lawful competition and harm Plaintiff's market presence.

49.    As a direct result of these false and repeated takedown requests, Plaintiff has experienced substantial harm, including lost sales, diminished search visibility, and damaged goodwill. Plaintiff has received numerous customer inquiries regarding the disappearance of previously listed products.

50.    ITC's conduct has also disrupted Plaintiff's operations. Following the takedowns, Plaintiff was forced to postpone production orders and lost valuable manufacturing slots in their factory schedule—disruptions that will have lasting effects on supply chain and inventory management.

## COUNT I

## (DECLARATION OF PATENT INVALIDITY OF THE '555 PATENT)

### (35 U.S.C. §§ 101, 102, 103 AND/OR 112; 28 U.S.C. § 2201)

51.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

52.    There is an actual, substantial, and justiciable controversy between Plaintiff Hongyu and Defendant ITC concerning the validity of the '555 Patent.

53.    The claims of the '555 Patent are invalid for failure to comply with one or more provisions of the Patent Act, Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112, and related judicial doctrines.

54.    The claims of the '555 Patent are anticipated under 35 U.S.C. § 102 and/or rendered obvious under 35 U.S.C. § 103 in view of the extensive prior art concerning air mattress structures. Features such as the top panel, bottom panel, side panel, internal wall, and tubular periphery were well-known in the art and disclosed in numerous references predating the '555 Patent's priority date.

55.    The purported novelty of the "substantially linear" internal wall and the fluid passage "therethrough" is also anticipated and/or obvious, as such structures and configurations were disclosed in earlier publications, expired patents, commercial products, and design literature. The individual elements and their combination lack the requisite novelty and non-obviousness under the patent laws.

56.    Further, the prosecution history of the '555 Patent confirms that Mr. Lau amended the claims to overcome prior art rejections—specifically by introducing the "substantially linear"

limitation. As a result, the patent's validity hinges on the presence of that limitation, which was required for allowance.

57.    To the extent the claims are not invalid under §§ 102 or 103, one or more claims of the '555 Patent are invalid under 35 U.S.C. § 112 for failure to meet the requirements of definiteness and/or written description. For example, terms such as "substantially linear cross-section" and "substantial pressure equilibrium" are vague, ambiguous, and lack objective boundaries, rendering the scope of the claims indefinite under § 112(b).

58.    Plaintiff is not aware of any secondary considerations that would overcome the prima facie case of invalidity under §§ 102 or 103.

59.    Accordingly, Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that the claims of the '555 Patent, including at least Claim 1, are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT II

## (DECLARATION OF NON-INFRINGEMENT OF THE '555 PATENT)

### (35 U.S.C. §§ 101 ET SEQ.; 28 U.S.C. § 2201)

60.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

61.    There exists an actual, substantial, and justiciable controversy between Plaintiff Hongyu and Defendant ITC concerning whether Plaintiff's air mattress products infringe any claim of the '555 Patent.

62.    Plaintiff's air mattresses do not infringe, and have not infringed, any valid and enforceable claim of the '555 Patent, either literally or under the doctrine of equivalents.

63.    Plaintiff's air mattresses do not meet at least the following key limitations of the asserted claims of the '555 Patent: Plaintiff's products do not include an internal wall with a "substantially linear cross-section" between the claimed seams; Plaintiff's products do not include a "fluid passage therethrough" the internal wall; and Plaintiff's products do not maintain "substantial pressure equilibrium" within the claimed internal volume, due to the segmented-weld design that creates intentional pressure variation.

64.    Plaintiff has repeatedly provided ITC and Amazon with detailed structural analysis, visual evidence, and counsel-supported legal opinions confirming that Plaintiff's products do not fall within the scope of the asserted claims of the '555 Patent.

65.    Plaintiff does not indirectly infringe any claim of the '555 Patent, either by inducement or contributory infringement, as there is no underlying direct infringement and Plaintiff has acted in good faith at all times with a reasonable belief that their products are lawful and non-infringing.

66.    In light of ITC's repeated takedown demands and continued assertions of infringement, Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that they do not infringe, and have not infringed, any claim of the '555 Patent.

## COUNT III

## (UNFAIR COMPETITION)

## (TEXAS COMMON LAW)

67.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

68.    As alleged above, Defendant ITC has engaged in unlawful and unfair competition under Texas common law by submitting false and misleading takedown requests to Amazon.com

asserting infringement of the '555 Patent—despite knowing that the asserted claims were invalid, not infringed, and materially different from Plaintiff's products.

69.     ITC's conduct was calculated to harm Plaintiff's business operations, deprive Plaintiff of market access, and suppress lawful competition, all without any reasonable basis in fact or law.

70.     ITC's conduct constitutes a misuse of purported intellectual property rights in violation of federal patent law and Texas unfair competition principles. ITC made these assertions without a reasonable basis, with knowledge of the prior art, and in conscious disregard of its duty of good faith in enforcing patent rights.

71.     ITC's repeated efforts to remove Plaintiff's product listings deprived Plaintiff of a core marketing and distribution channel, caused reputational harm, and interfered with fair competition. The harm caused to Plaintiff and the marketplace outweighs any justifiable benefit to ITC, particularly where no adjudicated infringement has occurred and the takedown demands were based on objectively baseless claims.

72.     As a direct and proximate result of ITC's unfair conduct, Plaintiff has suffered economic injury, including lost sales, reputational harm, and disruption to manufacturing and distribution. Specifically, ITC's baseless complaints caused Amazon to remove dozens of Plaintiff's air mattress listings, including those identified by ASINs: B0D7LH4PBS, B0C555TGHR, B0D2MP66Y1, B0D2HM62SM, B09NBTJZZ7, B0CXDDW6CJ, B0C6T55KVH, B0C4P9DJTM, B0D95S2HGZ, B0D8VM9236, B09NBTKRKB, B0D5GZT79C, B0CCV3CCY1, B0D7J38W9K, B0B4G7WPPV, B0D4Z6WLX7, B0C557NZGL, B0C73GPM35, B0D53QF3VC, B0D7L993KZ, B0D8L6LVTM, B0D1KB71SV, B0D95TSRTP, B0CZDV6TWX, B0D7L97HG5, B0CR1BKGQ4,

B0CP23FCVY,     B0D2QX7WRZ,     B0D2MM4L15,     B0D53ZYYC9,     B0D7LGY594,

B0D53RCYFZ,     B0CHFY411R,     B0CZDYJSGT,     B0CZF14LTP,     B0C6T6DBX4,

B0C73JZG5R,     B0CXDNFWZ9,     B0CXDNP7CS,     B0D8V6B655,     B0D2QZQY4H,

B0C24G68XP,     B0D7L72H8S,     B0D3WDMHQL,     B0CX134B4S,     B0D1KCN5XW,

B0CX1LM6JL, B0CZDS23JN, B0D7L2CNY2, B0CXDJF42F.

73.     Plaintiff is informed and believes, and on that basis alleges, that ITC engaged in

this conduct willfully and in conscious disregard of Plaintiff's rights, with intent to vex, harass,

and exclude Plaintiff from fair participation in the market.

74.     In addition, ITC has wrongfully profited and continues to profit from its unlawful

conduct.

75.     Defendant acted willfully, maliciously, and in bad faith, entitling Plaintiff to actual

damages and exemplary damages under Texas law.

76.     Plaintiff seeks all remedies available under Texas common law, including but not

limited to damages, disgorgement of unjust profits, and exemplary damages.

## COUNT IV

## (BUSINESS DISPARAGEMENT)

### (TEXAS COMMON LAW)

77.      Plaintiff repeats, realleges, and incorporates by reference each of the foregoing

paragraphs as if fully set forth herein.

78.     Through multiple takedown requests submitted to Amazon.com, Defendant ITC

published false and disparaging statements of fact concerning Plaintiff's air mattress products.

Specifically, Defendant asserted, without legal justification, that Plaintiff's air mattresses

infringed the '555 Patent and that ITC had a legal right to demand removal of Plaintiff's product listings from Amazon.

79.    These statements were made to Amazon.com and caused removal of Plaintiff's listings.

80.    These statements were false. Among other things, (a) Plaintiff's products do not infringe any valid or enforceable claim of the '555 Patent; and (b) the '555 Patent is invalid and unenforceable for reasons set forth herein. ITC therefore had no lawful basis to assert infringement or to seek removal of Plaintiff's listings.

81.    ITC made these false statements with knowledge of their falsity, or with reckless disregard for the truth. ITC was aware that it did not invent the claimed features of the '555 Patent, that its patent claims were invalid in light of prior art, and that Plaintiff's air mattresses did not contain all the required claim limitations—specifically the "substantially linear" internal wall and "fluid passage therethrough."

82.    These statements were not mere expressions of opinion. They were assertions of fact—specifically, that Plaintiff's products violated enforceable intellectual property rights—and were presented to Amazon.com and others as legally actionable claims of patent infringement.

83.    The statements were published with malice and caused special damages to Plaintiff, including lost profits, diminished customer relationships, and reputational harm.

84.    ITC's false statements caused Amazon.com to remove Plaintiff's product listings and to block sales of those products. This has directly resulted in lost revenue, lost customers, reputational damage, and other forms of economic harm to Plaintiff.

85.     Plaintiff is informed and believe, and based thereon allege, that ITC engaged in the conduct alleged herein with malice, oppression, and fraud, and with intent to interfere with Plaintiff's business relationships. ITC's conduct was willful, wanton, and carried out in conscious disregard of Plaintiff's rights.

86.     Plaintiff is entitled to recover actual damages, special damages, and exemplary damages as permitted under Texas law.

## COUNT V

## (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)

## (TEXAS COMMON LAW)

87.      Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88.     At all relevant times, Plaintiff maintained ongoing and prospective economic relationships with existing and potential customers through the Amazon.com marketplace and other retail channels. These relationships carried a high probability of resulting in future economic benefit to Plaintiff in the form of product sales, customer goodwill, and recurring business.

89.     Defendant ITC was aware of these economic relationships and the value they represented to Plaintiff. ITC also knew that the removal of Plaintiff' product listings— particularly during peak sales periods—would interfere with Plaintiff' ability to capitalize on those relationships and secure those economic advantages.

90.     As alleged above, Defendant's conduct was independently tortious and not justified or privileged. ITC engaged in intentional and wrongful conduct by submitting takedown requests to Amazon.com alleging patent infringement, despite knowing that the '555 Patent was invalid

and that Plaintiff's products did not infringe. This conduct was not privileged or justified, and it was specifically intended to disrupt Plaintiff's marketplace presence and prevent sales to Plaintiff's customers.

91.    Defendant's conduct was independently tortious and not justified or privileged. ITC's conduct did in fact disrupt Plaintiff's economic relationships, causing Amazon to remove dozens of product listings, prevent customer purchases, and impair Plaintiff's ability to fulfill demand, advertise, and compete fairly in the market.

92.    As a direct and proximate result of ITC's interference, Plaintiff has suffered and will continue to suffer economic harm, including lost sales, lost market opportunities, loss of goodwill, and damage to customer relationships.

93.    Plaintiff is entitled to actual and consequential damages, as well as exemplary damages under Texas law for Defendant's willful and malicious conduct.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant ITC as follows:

A.    Declaring that Plaintiff does not infringe any claim of U.S. Patent No. 7,353,555, either directly or indirectly, literally or under the doctrine of equivalents;

B.    Declaring that U.S. Patent No. 7,353,555 is invalid under one or more provisions of Title 35 of the United States Code;

C.    Entering judgment that Plaintiff's air mattress products do not infringe, and have not infringed, any valid claim of U.S. Patent No. 7,353,555;

D.      Entering judgment that Defendant's assertion and enforcement of U.S. Patent No. 7,353,555 against Plaintiff constitutes unfair competition under Texas common law;

E.      Awarding Plaintiff restitution and/or disgorgement of all profits unjustly obtained by Defendant as a result of its unfair competition;

F.      Awarding Plaintiff compensatory damages for harm caused by Defendant's business disparagement, including lost profits and reputational harm;

G.      Awarding Plaintiff compensatory damages for harm caused by Defendant's tortious interference with Plaintiff's prospective business relationships, including lost sales and business opportunities;

H.      Awarding Plaintiff exemplary damages under Texas law to punish and deter Defendant's willful, malicious, and wrongful conduct;

I.      Awarding Plaintiff its costs, expenses, and reasonable attorneys' fees as permitted by law; and

J.      Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: May 30, 2025                                         Respectfully submitted,

                                                            /s/ *Christopher E. Hanba*
                                                            Christopher E. Hanba
                                                            Texas Bar No. 24121391
                                                            chanba@dickinson-wright.com
                                                            Jordan E. Garsson
                                                            Texas Bar No. 24131326
                                                            jgarsson@dickinson-wright.com

                                                            DICKINSON WRIGHT PLLC
                                                            607 W. 3rd Street, Suite 2500
                                                            Austin, Texas 78701
                                                            Telephone: (512) 582-6889
                                                            Facsimile: (844) 670-6009

                                                            *Attorneys for Plaintiff*
                                                            *Dongguan Hongyu Plastic Co., Ltd.*

## CERTIFICATE OF SERVICE

I certify that on May 30, 2025, Plaintiff's Complaint for Declaratory Relief, Unfair Competition, Business Disparagement, and Tortious Interference with Prospective Business Relations was filed via the Court's CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Christopher E. Hanba*
Christopher E. Hanba